[921 NYS2d 114]

Marie-Carmene Damas, Respondent, v Romann Valdes et al., Appellants.

Second Department, April 12, 2011

**APPEARANCES OF COUNSEL**

*Nancy L. Isserlis*, Long Island City (*Lawrence R. Miles* and *Francis M. Cerniglia* of counsel), for Romann Valdes, appellant.

*Lawrence, Worden, Rainis & Bard, P.C.*, Melville (*Roger B. Lawrence* of counsel), for Raymond S. Gray and another, appellants.

*Harmon, Linder & Rogowsky*, New York City (*Mitchell Dranow* of counsel), for respondent.

### OPINION OF THE COURT

DILLON, J.

This appeal presents an issue of first impression in the appellate courts. We are asked to determine whether a pregnant plaintiff, who was prescribed prolonged bed rest to deal with preterm labor allegedly caused by an automobile accident, may obtain summary judgment under the 90/180-day category of the New York Insurance Law threshold. We hold that where there is proof that preterm labor is causally related to an automobile accident, and where a physician recommends bed rest, such bed rest does qualify the plaintiff for summary judgment if it meets the minimum time frame contemplated by Insurance Law § 5102 (d) and if the defendant fails to raise a triable issue of fact in opposition. For reasons set forth below, we find that in this matter, the plaintiff failed to make a prima facie showing of entitlement to judgment as a matter of law on the issue of serious injury, as her submissions did not establish the causal connection between the automobile accident on the one hand, and the prescribed bed rest on the other.

### I. Relevant Facts

On March 29, 2006, the plaintiff was a passenger in an automobile owned by the defendant Romann Valdes, which was involved in an accident with a second vehicle owned by the defendant Exide Technologies (hereinafter Exide) and operated by the defendant Raymond S. Gray. At the time of the occurrence, the plaintiff was three months pregnant and carrying twins. The plaintiff thereafter prematurely delivered her twins in the seventh month of gestation.

In her bills of particulars, dated August 23, 2007 and February 6, 2009, the plaintiff claimed that, as a result of the accident, she had been confined to bed for approximately 15 weeks, confined to home for approximately 20 weeks, and incapacitated from employment for four months. She alleged, as a basis of recovery, that she was disabled at least 90 of the 180 days following the accident.

The plaintiff testified at her deposition that, immediately after the accident, she felt abdominal pain and contractions. She

was treated at the emergency room of Brookdale Hospital and was examined by Dr. Jacqueline Ford. Dr. Ford found, inter alia, the absence of placental abruption or vaginal bleeding. Dr. Ford initially prescribed one week of pelvic and physical rest. According to the plaintiff, she continued to experience contractions and was admitted to the hospital on April 5, 2006, for 24 hours, until the contractions ceased. On April 19, 2006, the plaintiff was treated for nausea, vomiting, and dehydration, and then released. On June 7, 2006, the plaintiff complained of cramps and was diagnosed with "preterm labor, twin gestation," for which she was again prescribed bed rest. The plaintiff's twins were born prematurely on July 31, 2006.

The plaintiff moved for summary judgment on the issue of serious injury on the ground that she was confined to bed and unable to engage in substantially all of her usual and customary activities for at least 90 of the 180 days following the accident (hereinafter the 90/180-day category). The plaintiff's motion was supported by a one-page affirmation of Dr. Ford, who opined that "[d]ue to the injuries sustained in the car accident on March 29, 2006, [the plaintiff] experienced pregnancy complications, and I prescribed her bed rest for the rest of her pregnancy for approximately six month[s]." Dr. Ford's affirmation was accompanied by disability claim forms which she executed on May 16, 2006, June 7, 2006 and July 10, 2006, reflecting diagnoses in each instance of preterm labor and, in the first instance, spontaneous "threatened abortion." The plaintiff stated in a supporting affidavit that she remained at home or in bed, unable to work, upon the advice of her physician, for periods of time that totaled more than 90 of the 180 days immediately following the occurrence.

In separate submissions, Valdes, Exide, and Gray opposed the plaintiff's motion for summary judgment and cross-moved for summary judgment dismissing the complaint insofar as asserted against each of them on the ground that the plaintiff did not sustain a threshold injury under the 90/180-day category, permanent loss of use, permanent consequential limitation, and significant limitation categories of Insurance Law § 5102 (d).

Regarding the 90/180-day category, Valdes proffered the affirmation of an obstetrician, Dr. Leonard Roberts, who examined the plaintiff and noted that she had increased distention of the uterine cavity attributable to her multifetal pregnancy, but no anatomic injury. Dr. Roberts opined that the plaintiff's "premature labor" and emergency cesarian section were due to the

observed distention of the uterine cavity and bore no relation to the subject accident.

As to the same threshold category, Exide and Gray proffered an unsworn, unaffirmed report of Dr. Milton Haynes. Dr. Haynes noted that the plaintiff had a medical history that included two prior preterm labors and deliveries in 2001 and 2003, and a surgical conization procedure on her cervix in 2003 which can result in an incompetent and shortened cervix and preterm labor. Based on the plaintiff's history of preterm labor, the conization procedure, and the shortened cervix found by examination, Dr. Haynes concluded that the plaintiff's preterm delivery on July 31, 2006 was not causally related to the subject accident.

In the order appealed from dated June 2, 2009, the Supreme Court granted the plaintiff's motion for summary judgment on the issue of serious injury under the 90/180-day category of the Insurance Law and denied the defendants' respective cross motions for summary judgment dismissing the complaint insofar as asserted against them (23 Misc 3d 1133[A], 2009 NY Slip Op 51070[U] [2009]).

We modify and conclude that the plaintiff's motion for summary judgment on the issue of serious injury on the 90/180-day category of Insurance Law §§ 5104 and 5102 (d) should have been denied, as she failed to make a prima facie showing of entitlement to judgment as a matter of law.

## II. The Plaintiff's Motion for Summary Judgment

Insurance Law § 5104 provides that there shall be no right of recovery for personal injuries arising out of negligence in the use or operation of a motor vehicle within the state, except in the case of serious injury or for basic economic loss. Serious injury is defined by condition-specific categories in Insurance Law § 5102 (d), and includes, inter alia, a medically-determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 355-356 [2002]; *Gaddy v Eyler*, 79 NY2d 955, 957 [1992] [there must be curtailment of usual activities to a great extent, rather than some slight curtailment]; *Ellithorpe v Marion*, 34 AD3d 1195, 1197 [2006]).

Initially, we address the general question of whether a plaintiff's prolonged bed rest, upon the advice of a physician, to address preterm labor causally related to an automobile accident, may qualify as a "serious injury" under the 90/180-day category of Insurance Law § 5102 (d). To date, no appellate case has specifically addressed the question.

The Comprehensive Motor Vehicle Insurance Reparations Act, commonly referred to as the No-Fault Law, as codified in article 51 of the Insurance Law, was enacted in 1973 primarily to ensure prompt compensation to auto accident victims without regard to fault, to reduce the burden on the courts, and to provide premium savings to New York motorists (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 860 [2003]). Insurance Law § 5102 (d), as amended in 1984 (*see* L 1984, ch 367, § 1; L 1984, ch 955, § 4), provided, for the first time, that "loss of a fetus" constitutes a serious injury for which a plaintiff may recover damages for noneconomic loss (*see generally Brannan v Brownsell*, 23 AD3d 1106, 1107 [2005]; *McKendry v Thornberry*, 23 Misc 3d 707, 711-712 [2009]; *Doyle v Van Pelt*, 189 Misc 2d 67, 70 [2001]). Left unresolved by Insurance Law § 5102 (d) and post-1984 case law is whether "loss of a fetus" represents the minimum injury that the legislature intended to require for the recovery of damages for pregnancy-related noneconomic loss in automobile actions in the state (*see Damas v Valdes,* 23 Misc 3d 1133[A], 2009 NY Slip Op 51070[U] [2009]) or, as noted by the Supreme Court, whether the 1984 amendment to the No-Fault Law could be merely interpreted as reflecting a legislative intent to protect pregnancy (*id.,* citing *McKendry v Thornberry,* 23 Misc 3d 707, 711 [2009]).

■ Upon consideration of the issue, we hold that the "loss of a fetus" category and the 90/180-day category of Insurance Law § 5102 (d) are two separate, independent, and free-standing statutory bases by which a plaintiff may be eligible for damages for qualifying noneconomic loss sustained by the use or operation of motor vehicles. The various categories of "serious injury" as defined by Insurance Law § 5102 (d) are read in the disjunctive, so that the failure of a plaintiff to qualify for damages under one category does not necessarily preclude a recovery for the same alleged injuries under another category (*see Oberly v Bangs Ambulance,* 271 AD2d 135, 137 [2000], *affd* 96 NY2d 295 [2001]; *Miller v Miller*, 100 AD2d 577, 578 [1984]; *see also Glover v Capres Contr. Corp.,* 61 AD3d 549, 550 [2009]). We hold, as a general matter, that a plaintiff's prolonged period of

bed rest ordered by a treating physician as a means of dealing with diagnosed preterm labor causally related to an automobile accident may, upon the submission of appropriate proof, qualify for judgment as a matter of law in favor of the plaintiff under the definitional standard of the 90/180-day category of Insurance Law § 5102 (d), even if the labor does not advance to the point of premature delivery or spontaneous abortion of the fetus.

A question presented on this appeal is whether the plaintiff's evidence submitted in support of her motion for summary judgment established her prima facie entitlement to judgment as a matter of law on the issue of serious injury under the 90/180-day category. We conclude that the plaintiff's submissions did not make a prima facie showing of entitlement to judgment as a matter of law. Under Insurance Law § 5102 (d), an injury must be "medically determined" to qualify under the 90/180-day category (*Galofaro v Wylie*, 78 AD3d 652 [2010]; *see Sanz v MTA-Long Is. Bus*, 46 AD3d 867 [2007]), meaning that the condition must be substantiated by a physician (*see Ryan v Xuda*, 243 AD2d 457, 457-458 [1997]; *Schaefer v Pierce*, 205 AD2d 521, 521-522 [1994]; *Traugott v Konig*, 184 AD2d 765 [1992]). Additionally, the condition must be causally related to the accident (*see Elshaarawy v U-Haul Co. of Miss.*, 72 AD3d 878, 881 [2010]; *Ellithorpe v Marion*, 34 AD3d at 1197; *Lalli v Tamasi*, 266 AD2d 266 [1999]; *Alladkani v Daily News*, 262 AD2d 511 [1999] [miscarriage of fetus not shown to be proximately caused by accident]).

While the overwhelming bulk of summary judgment motions based upon the Insurance Law serious injury threshold are filed by defendants seeking the dismissal of complaints, nothing prevents plaintiffs from affirmatively seeking summary judgment on serious injury on the basis of their claimed serious injuries as supported by proper and adequate evidence. In such instances, as here, the plaintiff bears the initial burden of proving entitlement to judgment as a matter of law under the 90/180-day category (*see Elshaarawy v U-Haul Co. of Miss.*, 72 AD3d at 880, 881; *Ellithorpe v Marion*, 34 AD3d at 1197; *see generally Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 559 [1980]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]; *Autiello v Cummins*, 66 AD3d 1072, 1073 [2009]; *McHugh v Marfoglia*, 65 AD3d 828, 829 [2009]; *LaForte v Tiedemann*, 41 AD3d 1191, 1192 [2007]; *Horton v Warden*, 32 AD3d 570, 572 [2006]; *Boorman v Bowhers*, 27 AD3d 1058, 1059

[2006]; *Hillman v Eick*, 8 AD3d 989, 991 [2004]). Only if the burden is met does it then shift to the opposing party to proffer evidence in admissible form raising a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d at 562 [1986]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d at 1068; *Autiello v Cummins*, 66 AD3d at 1074; *Horton v Warden*, 32 AD3d at 572).

Here, based on a side-by-side comparison, Dr. Ford's affirmation attributing the plaintiff's preterm labor to the accident is inconsistent with the attached disability records executed by Dr. Ford. The disability record of May 16, 2006, which identifies the plaintiff's condition as "threatened preterm labor," states, inter alia, that the plaintiff first consulted Dr. Ford for "this condition" on February 14, 2006, which was approximately six weeks before the subject accident. The same report lists disability-related services as having been provided to the plaintiff on February 14, 2006, March 1, 2006 and March 8, 2006, all prior to the automobile accident of March 29, 2006. Similar information was repeated on the disability form executed on July 10, 2006. Despite these cryptic references to Dr. Ford's treatment of the plaintiff for "this condition" prior to the accident, the plaintiff's moving papers fail to include any hospital or medical charts or records for the consultations that occurred on February 14, 2006, March 1, 2006 and March 8, 2006. Moreover, Dr. Ford's affirmation, submitted in support of the plaintiff's motion for summary judgment, does not acknowledge or address the plaintiff's preterm labor condition for which she was apparently treated prior to the subject accident. The failure of Dr. Ford to reconcile her apparent preaccident diagnosis of preterm labor with her affirmed opinion that the preterm labor was caused by the March 29, 2006 accident, renders her expert opinion in support of summary judgment speculative, conclusory, and insufficient to meet the plaintiff's prima facie burden of proof on causation (*see Singh v City of New York*, 71 AD3d 1121 [2010]; *Nicholson v Allen*, 62 AD3d 766, 767 [2009]; *Zarate v McDonald*, 31 AD3d 632, 633 [2006]; *Bennett v Genas*, 27 AD3d 601 [2006]; *Giraldo v Mandanici*, 24 AD3d 419, 420 [2005]; *Allyn v Hanley*, 2 AD3d 470, 471 [2003]; *Lorthe v Adeyeye*, 306 AD2d 252, 253 [2003]; *Ifrach v Neiman*, 306 AD2d 380 [2003]; *Ginty v Mac-Namara*, 300 AD2d 624, 625 [2002]; *Narducci v McRae*, 298 AD2d 443, 444 [2002]; *Kallicharan v Sooknanan*, 282 AD2d 573, 574 [2001]; *Waaland v Weiss*, 228 AD2d 435 [1996]).

Because the plaintiff did not meet her prima facie burden entitling her to judgment as a matter of law, we need not ad-

dress the sufficiency of the papers submitted by the defendants in opposition (*see Winegrad v New York Univ. Med. Ctr.*, 46 NY2d at 855; *Kouyate v Chowdhury*, 76 AD3d 547 [2010]; *Perez v Johnson*, 72 AD3d 777, 778 [2010]; *Safer v Silbersweig*, 70 AD3d 921, 922 [2010]; *Geba v Obermeyer*, 38 AD3d 597 [2007]; *Larrieut v Gutterman*, 37 AD3d 424 [2007]; *Agha v Alamo Rent A Car*, 35 AD3d 639 [2006]; *Schacker v County of Orange*, 33 AD3d 903, 904 [2006]).

III. The Defendants' Cross Motions for Summary Judgment

Nevertheless, since the defendants affirmatively cross-moved for summary judgment dismissing the complaint, inter alia, insofar as it seeks damages for injuries alleged under the 90/180-day category, each set of cross motion papers must be examined to determine whether they met their own burden of proving prima facie entitlement to judgment as a matter of law in their favor.

The cross motion of Valdes relies, for his 90/180-day category argument, upon the affirmed expert opinion of Dr. Roberts that the plaintiff's "premature labor and the emergency cesarian section of July 31, 2006, bears no relation to the [motor vehicle accident] of March 29, 2006." Dr. Roberts attributed the plaintiff's "premature labor and delivery" to increased distention of the uterus cavity common to multifetal pregnancies. However, as noted by the Supreme Court, it is unclear whether Dr. Roberts' reference to "premature" labor refers to the plaintiff's labor in month seven immediately preceding the cesarian delivery, or the "preterm" labor specifically alleged in the plaintiff's bills of particulars in month three that resulted in the plaintiff's bed rest initially and in the months that followed. By failing to specifically address the plaintiff's initial bed rest and the recommendation of Dr. Ford that the plaintiff remain in bed on a prolonged basis, we conclude that Dr. Roberts' affirmation fails to meet Valdes' burden of establishing prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against Valdes.

The Supreme Court also properly determined that the obstetric report of Dr. Haynes, as proffered by Exide and Gray with their initial cross motion papers, was unsworn and unaffirmed, and therefore not admissible (*see Loadholt v New York City Tr. Auth.*, 12 AD3d 352 [2004]; *Pagano v Kingsbury*, 182 AD2d 268, 271 [1992]; *Gleason v Huber*, 188 AD2d 581, 582 [1992]; *Jacondino v Lovis*, 186 AD2d 109 [1992]; *Marsh v Wolf-*

*son*, 186 AD2d 115, 115-116 [1992]). Although the record demonstrates that an affirmed copy of Dr. Haynes' report was later submitted with the reply of Exide and Gray in further support of their cross motion, the affirmed copy of the report must be rejected since it sought to remedy basic deficiencies in their original cross motion papers rather than respond to arguments contained in the plaintiff's opposition to the cross motion (*see Henry v Peguero*, 72 AD3d 600, 602 [2010]; *Batista v Santiago*, 25 AD3d 326 [2006]; *Migdol v City of New York*, 291 AD2d 201 [2002]).

Inasmuch as triable issues of fact exist regarding whether the plaintiff was unable, as a result of the accident, to perform her usual and customary daily activities for at least 90 of the 180 days immediately following the accident, we need not reach those branches of the defendants' cross motions which were for summary judgment dismissing the complaint on other threshold injury grounds (*see Kolios v Znack*, 237 AD2d 333 [1997]).

Accordingly, the order is modified, on the law, by deleting the provision thereof granting the plaintiff's motion for summary judgment on the complaint, and substituting therefor a provision denying the motion; as so modified, the order is affirmed.

PRUDENTI, P.J., BALKIN and CHAMBERS, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof granting the plaintiff's motion for summary judgment on the complaint, and substituting therefor a provision denying the motion; as so modified, the order is affirmed, without costs or disbursements.